1

2

3

4

5

6

7

8

9

10            IN THE UNITED STATES DISTRICT COURT

11           FOR THE EASTERN DISTRICT OF CALIFORNIA

12   KIP CRANDALL,

13          Plaintiff,                    No. CIV S-04-2635 PAN

14       vs.

15   JO ANNE B. BARNHART,
     Commissioner of Social Security,
16

17          Defendant.              ORDER

18   _____/

19          The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to

20   proceed before a magistrate judge).[1]  Plaintiff seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner") denying application for Disability Insurance

22   Benefits ("DIB") under Titles II of the Social Security Act ("Act").  On May 10, 2005, plaintiff

23   filed a motion for judgment on the pleadings.  On July 11, 2005, defendant filed a motion for

24   remand.  On July 14, 2005, plaintiff filed a reply.  For the reasons that follow, the court will deny

25   _____

26          [1]  Plaintiff filed a consent form on January 12, 2005.  Defendant filed a consent form on
     January 11, 2005.

1

1  plaintiff's Motion for Judgment on the Pleadings and grant the Commissioner's Cross Motion for

2  Remand.

3  I.  Factual and Procedural Background

4         Plaintiff's application for disability benefits was denied initially on June 14, 2002,

5  and on reconsideration on September 27, 2002.  In a decision dated July 16, 2003, the

6  administrative law judge ("ALJ") determined plaintiff was not disabled.[2]  The ALJ's decision

7  became the final decision of the Commissioner when the Appeals Council denied plaintiff's

8  request for review.  The ALJ found plaintiff's degenerative disc disease is a severe impairment,

9  but found this impairment does not meet or medically equal one of the listed impairments;

10

11         [2] Disability Insurance Benefits are paid to disabled persons who have contributed to the
   Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income ("SSI") is paid
12  to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Under both provisions, disability
   is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a
13  medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) &
   1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  See 20 C.F.R.
14  §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The
   following summarizes the sequential evaluation:

15
          Step one:  Is the claimant engaging in substantial gainful
16  activity?  If so, the claimant is found not disabled.  If not, proceed
   to step two.
17        Step two:  Does the claimant have a "severe" impairment?
   If so, proceed to step three.  If not, then a finding of not disabled is
18  appropriate.
          Step three:  Does the claimant's impairment or combination
19  of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
   404, Subpt. P, App.1?  If so, the claimant is automatically
20  determined disabled.  If not, proceed to step four.
          Step four:  Is the claimant capable of performing his past
21  work?  If so, the claimant is not disabled.  If not, proceed to step
   five.
22        Step five:  Does the claimant have the residual functional
   capacity to perform any other work?  If so, the claimant is not
23  disabled.  If not, the claimant is disabled.

24  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25         The claimant bears the burden of proof in the first four steps of the sequential evaluation
   process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential
26  evaluation process proceeds to step five.  Id.

2

1  plaintiff's allegations regarding his limitations were not totally credible; plaintiff has the residual

2  functional capacity to perform a full range of light work activity; plaintiff cannot perform his past

3  relevant work; and based on an exertional capacity for light work and plaintiff's age, education

4  and work experience, using the Medical-Vocational Guidelines, plaintiff is not disabled.

5  Administrative Transcript ("AT") 20-21.  Plaintiff contends substantial evidence does not

6  support the ALJ's rejection of plaintiff's testimony regarding the severity of his symptoms and

7  the ALJ failed to give clear and convincing reasons for that finding; that the ALJ violated the

8  treating physician rule by according less weight to the treating physician's opinions regarding the

9  severity of plaintiff's limitations; the ALJ failed to give specific and legitimate reasons for

10 disregarding the opinions of the state agency physicians by not including or specifically

11 discrediting all of the limitations state agency physicians noted; the ALJ failed to obtain the

12 testimony of a vocational expert.

13 II.  Standard of Review

14       The court reviews the Commissioner's decision to determine whether (1) it is

15 based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the

16 record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing

17 Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).

18 Substantial evidence means more than a mere scintilla of evidence, but less than a

19 preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v.

20 Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a

21 reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402

22 U.S. 389, 402 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

23       The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484,

24 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the

25 ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court

26 may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.

1    Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence

2    supports the administrative findings, or if there is conflicting evidence supporting a finding of

3    either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812

4    F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was

5    applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

6    III.  Analysis

7              A.  Voluntary Remand to Obtain Vocational Expert

8              Defendant, upon further review of the record, has requested a voluntary remand of

9    this action in order to more fully develop the factual record, including obtaining testimony from a

10   vocational expert regarding the impact of plaintiff's nonexertional limitations, as well as setting

11   forth objective evidence to support a diagnosis adequate to account for plaintiff's subjective

12   complaints.

13             Defendant's arguments are well taken.  There are genuine issues of material fact at

14   issue that prevent this court from ordering immediate payment of benefits.  It does not appear the

15   ALJ considered all of plaintiff's nonexertional limitations when applying the Medical-Vocational

16   Guidelines because the ALJ did not include them in his residual functional capacity assessment.

17   (AT 20, 21.)  If plaintiff's nonexertional limitations alone limit his range of work, the Medical-

18   Vocational Guidelines may not apply, and the testimony of a vocational expert would be required

19   to identify jobs plaintiff can perform.  Desrosiers v. Secretary, 846 F.2d 573, 576-77 (9th Cir.

20   1988).  This matter should be remanded so the ALJ can determine the extent of plaintiff's

21   nonexertional limitations, specifically clarifying the finding regarding plaintiff's residual

22   functional capacity, and to obtain the services of a vocational expert to identify jobs plaintiff

23   might be able to perform despite his nonexertional limitations.  When a nonexertional

24   impairment significantly limits plaintiff's work in a certain category the ALJ must use other

25   guidance, such as a vocational expert.  Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985);

26   Odle v. Heckler, 707 F.2d 439 (9th Cir. 1983).  Because the ALJ did not obtain testimony from a

4

1   vocational expert, it is unclear on this record whether plaintiff's nonexertional limitations render

2   him unable to perform any work, so the case must be remanded.  Harman v. Apfel, 211 F.3d

3   1172, 1178 (9th Cir. 2000), 379 F.3d 587 (9th Cir. 2004).

4   On remand, the ALJ should more fully develop the factual record, including

5   obtaining testimony from a vocational expert regarding the impact of plaintiff's nonexertional

6   limitations, as well as setting forth objective evidence to support a diagnosis adequate to account

7   for plaintiff's subjective complaints.

8   B.  Credibility

9   Plaintiff contends the ALJ improperly assessed his credibility.  The ALJ

10  determines whether a disability applicant is credible, and the court defers to the ALJ's discretion

11  if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee v. Chater, 94

12  F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit credibility

13  finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d

14  1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific,

15  cogent reason for the disbelief").

16  In evaluating whether subjective complaints are credible, the ALJ should first

17  consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947

18  F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment,

19  the ALJ then may consider the nature of the symptoms alleged, including aggravating factors,

20  medication, treatment and functional restrictions.  See id. at 345-47.

21  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior

22  inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately

23  explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the

24  applicant's daily activities.  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally

25  SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician

26  and third party testimony about nature, severity and effect of symptoms, and inconsistencies

5

between testimony and conduct also may be relevant.  Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

In the instant case, there is medical evidence of an impairment as the ALJ found plaintiff had degenerative disc disease, which is a severe impairment under 20 C.F.R. § 404.1521.

Plaintiff testified he used a cane when his low back pain was at its worst because it relieved the "grinding pain."  (AT 18.)  The ALJ discredited this statement based on the consultative physician's statement that there was no need for any ambulatory device.  (AT 18.)

At the hearing, plaintiff testified that he gets severe headaches, for which he takes medication.  (AT 248.)  He confirmed he takes all his medications according to his doctor's orders.  (AT 249.)  Plaintiff testified that his lower back "feels like vice grips going into them all the time and twisting."  (AT 249.)  Plaintiff also pointed out a sensitive part on the right top front part of his head that "sends like a jab, like an ice pick, straight down . . . into [his] shoulder blades" (AT 250) when hit by water, brushing his hair or accidentally touching it.  (AT 250.)  Plaintiff testified that he can only bend his right elbow halfway up to his shoulder and he gets tingly feelings in his right hand, which is weaker than his left.  (AT 250.)

Plaintiff further testified that if he sits or stands beyond an hour and a half, he begins to shake and will start getting sick.  (AT 253.)  Plaintiff also testified he can only walk for

1   eight minutes.  (AT 253.)  Plaintiff testified he can carry a 12-pack of Pepsi and can pick up a

2   gallon of milk, but that both activities knot his back.  (AT 254.)  Plaintiff testified he can only

3   watch television for up to 45 minutes at a time, then he has to "get up and go."  (AT 256.)

4          Plaintiff also testified that his heart hurts sometimes; although he went to a

5   hospital in 2000 thinking he was having a heart attack, apparently it was not a heart attack.  (AT

6   257.)  Plaintiff conceded the only evidence of an emergency room visit was from a June 14, 2001

7   St. Joseph's Medical Center emergency room treatment note; the note does not mention heart-

8   related complaints.  (AT 117.)  However, plaintiff was subsequently diagnosed with a grade I/VI

9   soft systolic murmur and mid-systolic click at the apex, cardiac arrhythmias and a syncopal spell

10  on September 17, 2001 by Dr. Buhari at the San Joaquin Cardiology Medical Group.  (AT 141-

11  43.)  Dr. Buhari diagnosed plaintiff with mild intimal thickening on October 23, 2001 and an

12  ECG performed on the same day revealed trace mitral regurgitation.  (AT 144-45.)  Dr. Buhari

13  ruled out ischemic coronary disease and mitral valve prolapse.  (AT 141-42.)

14         Although plaintiff's treating doctor, Dr. Shergill, supported many of plaintiff's

15  expressed limitations in the doctor's July 25, 2002 and March 7, 2003 assessment forms, the ALJ

16  accorded little weight to those forms because

17         they [were] not supported by objective signs and laboratory
           findings sufficient for such limitations.  Further, . . . these
18         conclusions were based upon significantly less than a continuous
           12-months of observation and treatment, and also their conclusions
19         of severe limitations that would limit [plaintiff] to less than light
           work are solitary and contradicted by all other medical opinions in
20         the record.  Finally, the [ALJ found] it less than convincing that
           [plaintiff] would be able to perform even part-time work activity as
21         a locksmith with the degree of functional limitation and pain
           symptomatology that he has alleged.
22
           Subjective complaints are considered credible **only** to the extent
23         that they are supported by the evidence of record as summarized in
           the text of this decision.  Therefore, to the extent that the still
24         relatively young claimant contends that he would be completely
           incapable of performing even light work that did not require more
25         than occasional overhead reaching with the upper left

26  /////

7

1    (non-dominant) extremity, the [ALJ found] these contentions to be
2    less than fully credible when compared to the record as a whole.

3    (AT 19.)

4         This court finds that the ALJ's credibility determination was based on permissible

5    grounds and will not be disturbed.

6         C.  <u>Treating Physician Rule</u>

7         Plaintiff contends the ALJ improperly rejected the opinions of his treating

8    physicians with respect to his ability to perform manual labor and his mental condition.  The

9    weight given to medical opinions depends in part on whether they are proffered by treating,

10   examining, or non-examining professionals.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).

11   Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

12   opportunity to know and observe the patient as an individual.  <u>Id.</u>; <u>Smolen v. Chater</u>, 80 F.3d

13   1273, 1285 (9th Cir. 1996).

14        To evaluate whether an ALJ properly rejected a medical opinion, in addition to

15   considering its source, the court considers whether (1) contradictory opinions are in the record,

16   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

17   treating or examining medical professional only for "clear and convincing" reasons.  <u>Lester</u>, 81

18   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

19   rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  <u>Id.</u> at

20   830.  While a treating professional's opinion generally is accorded superior weight, if it is

21   contradicted by a supported examining professional's opinion (e.g., supported by different

22   independent clinical findings), the ALJ may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d

23   1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  In

24   any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

25   findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

26   minimally supported opinion rejected); <u>see</u> <u>also</u> <u>Magallanes</u>, 881 F.2d at 751.  The opinion of a

1    non-examining professional, without other evidence, is insufficient to reject the opinion of a

2    treating or examining professional.  Lester, 81 F.3d at 831.

3                 Plaintiff began treatment with Dr. Shergill on July 11, 2002.  (AT 195-96.)

4    Plaintiff went to Dr. Shergill on at least four separate occasions between July 11, 2002 and

5    March 7, 2002.  (AT 198, 233.)  Three of these visits involved examination of plaintiff and all

6    four visits involved treatment.  (AT 192, 196, 198-202, 233-37.)  There were treatment notes that

7    supported Dr. Shergill's opinions.  On March 19, 2001, treatment notes from plaintiff's physical

8    therapist reflect plaintiff had limited range of motion in his cervical spine region and the right

9    elbow with spasms and pain.  (AT 104.)  On April 10, 2002, Dr. Wong examined plaintiff and

10   noted plaintiff's right elbow locked at 10-15 degrees of full flexion, had chronic cervical pain

11   and needed pain management treatment.  (AT 147-48.)  On February 2, 2002 and a later,

12   unspecified, date, Dr. Wong noted plaintiff was wearing a cervical collar due to pain and because

13   his neck was going out.  (AT 149, 153-54.)  Dr. Wong noted plaintiff suffered from chronic pain

14   on at least four occasions.  (148, 153, 154, 172.)  Dr. Wong noted plaintiff complained of pain

15   (AT 153) and cervical pain (AT 151) and diagnosed plaintiff with cervical arthritis on at least

16   two occasions (AT 148, 154).  An MRI taken on February 14, 2001 found mild central bulging of

17   the disc material at C5-C6 and mild decrease in disc height at C6-C7.  (AT 159.)  On May 25,

18   2002, Satish Sharma, M.D. performed an internal medicine consultation and examination.  (AT

19   177.)  Dr. Sharma noted tenderness to palpation of the thoracic and lumbar spine and paraspinal

20   regions with pain on forward flexion and extension, and spasms and pain on full abduction of the

21   left shoulder.  (AT 179.)

22                 However, the ALJ properly found there was contradicting evidence by examining

23   and consulting physicians.  Dr. Sharma examined plaintiff on May 25, 2002 and reported

24   negative straight leg raising, normal neurological examination, normal gait, and an ability to heel

25   and toe walk.  (AT 176-81; 179-80.)  Dr. Sharma opined that plaintiff could lift ten pounds

26   /////

1    frequently and twenty pounds occasionally and could stand and walk for six hours per day.  (AT

2    180.)

3            Dr. Thien Nguyen, a state agency reviewing physician, evaluated plaintiff on June

4    6, 2002.  (AT 183-90.)  Dr. Nguyen concluded plaintiff could lift and/or carry twenty pounds

5    occasionally, and ten pounds frequently, could stand, walk and/or sit for about six hours in an

6    eight hour work day, and that plaintiff was limited to occasional climbing, stooping, kneeling,

7    crouching and crawling.  (AT 184-85.)  Although he found plaintiff could frequently balance, Dr.

8    Nguyen stated plaintiff was limited in his ability to reach overhead with his left upper extremity.

9    (AT 185-86.)  Dr. Catherine Eskander, also a reviewing physician, largely confirmed Dr.

10   Nguyen's findings.  (AT 25, 203-10.)  Dr. Eskander found plaintiff could balance only

11   occasionally (AT 205) while Dr. Nguyen found he could balance frequently (AT 185).  Finally,

12   when asked on what clinical findings Dr. Shergill based his assessment of plaintiff's limitations,

13   he responded "tenderness in lumbosacral area."  (AT 198.)  The ALJ properly found that no other

14   physician limited plaintiff to less than a significant range of light work.  (AT 104, 148, 149, 153,

15   154.)

16           The court finds the ALJ's reasons were specific and legitimate to reject Dr.

17   Shergill's controverted medical opinion.

18           D.   Disregarding Opinions of State Agency Physicians Nguyen and Eskander

19           Finally, plaintiff argues that the ALJ erred by disregarding the opinions of state

20   agency physicians because the ALJ failed to include all of the limitations that the medical

21   consultants provided in their Physical Residual Functional Capacity Assessments.  (Pl.'s Mot. at

22   20.)  Defendant seeks remand of this issue for the ALJ to give further consideration to the

23   findings of Dr. Nguyen and Dr. Eskander, clarify whether he included  the additional

24   nonexertional limitations assessed by Drs. Nguyen and Eskander in his residual functional

25   capacity assessment and explain how plaintiff could perform his past relevant work in light of the

26   findings of Dr. Nguyen and Eskander.  (Deft.'s Mot. at 11.)  The record at present does not

demonstrate whether the ALJ considered these opinions and rejected them or whether the ALJ completely disregarded them.  Accordingly, the motion to remand this claim will be granted.  On remand, the ALJ should give further consideration to the findings of Dr. Nguyen and Dr. Eskander, clarify whether he included  the additional nonexertional limitations assessed by Drs. Nguyen and Eskander in his residual functional capacity assessment, and explain how plaintiff could perform his past relevant work in light of the findings of Dr. Nguyen and Dr. Eskander.

E.  Conclusion

Accordingly, IT IS HEREBY ORDERED that:

1.  Plaintiff's May 10, 2005 motion for judgment on the pleadings is denied;

2.  The Commissioner's July 11, 2005 cross-motion for remand is granted; and

3.  This matter is remanded for further proceedings consistent with this order.

DATED:  May 2, 2006.

UNITED STATES MAGISTRATE JUDGE

001; crandall.rem.ss

11